**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**VALERIE R. BATCHELOR,** *pro se,*

    **Plaintiff,**

v.                                        Case No. 8:08-cv-144-T-30TGW

**TAMPA ELECTRIC COMPANY,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Dispositive Motion (Dkt. 37), Defendant's Motion for Summary Judgment (Dkt. 38), and Defendant's Response in Opposition to Plaintiff's Dispositive Motion (Dkt. 45). The Court, having reviewed the motions, response, record evidence, and being otherwise advised in the premises, concludes that Plaintiff's Dispositive Motion should be denied and Defendant's Motion for Summary Judgment should be granted.[1]

---

[1] Plaintiff, proceeding *pro se*, did not file a response to Defendant's Motion for Summary Judgment. Accordingly, on January 6, 2010, the Court issued a *sua sponte* Order to Show Cause regarding Plaintiff's failure to file a response (Dkt. 46). As of the date of this Order, Plaintiff has not filed a written response to the Order to Show Cause, nor has she responded to Defendant's Motion for Summary Judgment. However, the Court construes Plaintiff's Dispositive Motion as an opposition to Defendant's Motion for Summary Judgment. Moreover, as set forth in more detail herein, the Court's independent review of the record reveals that there are no disputed issues of material fact that would preclude granting summary judgment in Defendant's favor.

## PROCEDURAL BACKGROUND

Plaintiff Valerie R. Batchelor ("Plaintiff" or "Batchelor") filed a complaint against Defendant Tampa Electric Company ("Defendant" or "Tampa Electric") alleging claims of discrimination, retaliation, and harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"). The Court granted Defendant's motions to dismiss Plaintiff's complaint and amended complaint without prejudice due to Plaintiff's failure to comport with the Federal Rules of Civil Procedure (Dkts. 9 and 14). Plaintiff filed a second amended complaint and Defendant again moved for dismissal for failure to state a claim upon which relief may be granted (and failure to otherwise comport with the Federal Rules of Civil Procedure). The Court granted the motion, in part, leaving Plaintiff's retaliation claim under Title VII as the only remaining claim (Dkt. 17).

This issue is now before the Court on both parties' dispositive motions for summary judgment.

## RELEVANT FACTS

Batchelor, an African-American female, began working for Tampa Electric as a result of a merger between Tampa Electric and People's Gas in 1997. During the relevant period of time, Batchelor was employed as a Senior Customer Service Professional (CSP) and her primary responsibilities included answering the phones and responding to various customer inquiries for Tampa Electric's customers.

CSP's are assigned to one of two call centers located in Plant City, Florida, and Ybor City, Florida. Batchelor initially was employed in the Ybor location and reported to Patrick

Potts ("Potts"). According to Batchelor, she worked well with Potts, but requested a transfer to Plant City because she was divorcing her husband, Derrick Brown, who also was employed by Tampa Electric at the Ybor location. At the Plant City location, Plaintiff's supervisor was Ron Everett ("Everett").

On March 20, 2006, Plaintiff applied for a promotion to the position of Unit Leader. The bid slip was submitted, but was misplaced by Defendant. After learning of its mistake, Defendant granted Plaintiff an interview for the position on April 6, 2006, along with the other applicants. Nine people were interviewed for five available positions. Plaintiff was not selected for the position. The individuals chosen to fill the five positions included two black females, one Hispanic male, one Hispanic female, and one white male.

On March 28, 2006, Plaintiff requested that she be returned to the Ybor call center. Plaintiff sent Everett an e-mail stating that she felt she was in a "Hostile Environment." (Dkt. 37, Ex. A-5). According to Everett, in response to Plaintiff's e-mail, he met with her to discuss her concerns and asked if he had done something to prompt her request for a transfer. Also according to Everett, Plaintiff said that he had raised his voice to her and Everett apologized, but explained that he had just been "stern," because she had failed to follow his directive as her supervisor. (Everett Affidavit). He further stated that Plaintiff did not assert that she had been discriminated against or subjected to a hostile environment based on her race or any other protected characteristic. According to Plaintiff, she requested the transfer because she believed she was double-teamed by other CSP's. According to Plaintiff,

she "would hate . . . to really say that [Everett] would use [her] race." (Plaintiff's deposition at 40).

On April 18, 2006, Plaintiff laterally transferred to the Ybor call center. The transfer was as to location only and there was no change in job function, benefits, or salary. At the Ybor location, Plaintiff's supervisor was Tina Mary ("Mary"). On April 21, 2006, Plaintiff attended the "Making Choices" presentation by Sheri Duffey ("Duffey"), Mary's supervisor. The presentation was given to all CSP's employed at the Ybor and Plant City locations and was designed to remind CSP's of Tampa Electric's policies and procedures and to aid CSP's in meeting required expectations. The theme for 2006 in the Customer Service Department was "Pulling Together." (Duffey Affidavit). According to Duffey, to reflect the theme she inserted an image of a knot on each slide of the presentation. The image was meant to encourage CSP's to make the right choices in their interactions with customers.

According to Mary, shortly after Plaintiff began in Ybor under her supervision, Mary noticed that Plaintiff's performance was not meeting required standards in certain areas. CSP's were evaluated monthly and received ratings in five areas: Availability; First Call Resolution; After Call Work; Quality; and Dimensions. Scores ranged from 1 to 5 in each area as follows: 1 (did not meet expectations, significant room for improvement); 2 (partially met expectations, but room for improvement); 3 (met expectations, performs consistently at good level); 4 (exceeded expectations frequently performs at very high level); and 5 (exceeded expectations, performs consistently at extremely high level). According to Mary, Plaintiff consistently received unacceptable ratings in the area of First Call Resolution due

to errors. Specifically, Plaintiff's monthly evaluations reflected a January rating of 2, February rating of 1, March rating of 3, April rating of 2, May rating of 2, June rating of 1, July rating of 1, August rating of 1, September rating of 2, and October rating of 2 in this area. According to Mary, the ratings are based on the number of errors committed and all CSP's are held to the same standard. During Plaintiff's deposition, she was unable to identify any CSP who was held to a different standard regarding the acceptable number of errors.

In addition to error reports, Mary received complaints from Plaintiff's co-workers regarding Plaintiff's conduct. On July 28, 2006, Sandra Whidden ("Whidden"), a CSP, reported to Mary that Plaintiff hung up on a customer and that the customer called back and reported that Plaintiff was loud, had "an attitude and wouldn't listen." (Mary Affidavit, Ex. 2). On August 15, 2006, Jason Benik reported to Mary that Plaintiff had a customer on hold for six and a half minutes, while talking to another CSP, and that there were over 100 calls on hold during this time. (Id. at Ex. 3).

According to Mary, she made repeated efforts to coach and assist Plaintiff in reducing her number of errors. Plaintiff was given assistance and training in the use of Customer Care technology. However, because Plaintiff was not meeting required standards, she was placed on an Action Plan on August 25, 2006. An Action Plan is a written document that identifies developmental needs and lists recommendations on how to improve in the necessary areas. According to Mary, it is utilized as an aid in addition to coaching from supervisors.

After the Action Plan was delivered to Plaintiff, Mary received e-mails from two employees who worked in an adjacent work group to the CSP's complaining about Plaintiff's behavior. Specifically, according to e-mails from Dianne Ferguson and Shane Smith to Mary, on August 25, 2006, they overheard Plaintiff talking loudly and making comments that they regarded as disruptive and offensive. On August 30, 2006, Mary discussed the e-mails with Betty Betz in Employee Relations, who recommended an Oral Reminder, the first step of Positive Discipline, and advised Mary to call Dr. Gary Wood ("Dr. Wood"), Tampa Electric's Employee Assistance Program (EAP) provider, to determine whether Plaintiff should be mandated to EAP based on a pattern of off-target behavior.

According to Mary, she called Dr. Wood on August 30, 2006 to discuss Plaintiff's behavior. Mary also provided Dr. Wood with a document summarizing Plaintiff's conduct. According to Mary, Dr. Wood agreed that Plaintiff should be mandated to EAP. Accordingly, on September 12, 2006, Mary and Duffey met with Plaintiff to deliver the Oral Reminder. Pursuant to the Positive Discipline policy, the Oral Reminder is to remain in effect for 90 days. After Mary and Duffey discussed the Oral Reminder with Plaintiff, Plaintiff was sent to Dr. Wood for an appointment. Dr. Wood referred Plaintiff to a psychiatrist for a fitness for duty evaluation. Subsequently, Dr. Wood released Plaintiff to return to work on September 18, 2006.

On September 25, 2006, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subjected to a hostile work environment since March of 2006. Plaintiff asserted that she had been the

subject of discrimination based on race and sex, and that she had been retaliated against. On September 29, 2006, the EEOC closed the investigation. On September 29, 2006, Plaintiff was also administered a Written Reminder, the second step of Positive Discipline, for not meeting work standards due to excessive errors and poor call management skills. Pursuant to the Positive Discipline Policy, the Written Reminder was to remain in effect for 180 days. According to Mary, the Written Reminder was administered because Plaintiff received only one acceptable rating in First Call Resolution since January of 2006. Six specific recommendations were made to improve the quality of Plaintiff's calls. The Quality Assurance Specialist reported that one of Plaintiff's calls lasted 62 minutes and included "lots of personal discussion" at the end of the call. (Mary Affidavit, Ex. 10).

Mary discussed Plaintiff's Action Plan with Plaintiff and provided Plaintiff with a copy of the "Making Choices" presentation. According to Mary, she provided Plaintiff with a copy of the presentation because it was recently reviewed and distributed at a team meeting that Plaintiff had not attended. According to Mary, she explained to Plaintiff that the presentation was meant to address daily choices made by CSP's in interacting with customers. According to Plaintiff, she felt threatened by the picture of the rope on the presentation, which she believed looked like a noose. According to Plaintiff, she thought Mary might be retaliating against her, because Plaintiff filed a grievance against Mary based on an error she received that should have been corrected. Plaintiff felt that Mary's retaliation could have been racial.

Defendant was unaware at the time this discipline was issued that Plaintiff had filed a Charge of Discrimination. Plaintiff had not complained of discrimination to anyone at Tampa Electric and Defendant did not receive notice of the Charge of Discrimination until October 2, 2006. According to Plaintiff, she did not know whether anyone at Tampa Electric was aware of the Charge of Discrimination at the time that she was given the September 29, 2006 Written Reminder and Action Plan.

On October 4, 2006, Plaintiff filed a second Charge of Discrimination with the EEOC, claiming discrimination and retaliation. Also, in October of 2006, Plaintiff had four First Call Resolution errors. Additionally, Mary received e-mails from Drew Sirianni ("Sirianni"), a Supervisor in Customer Care, about Plaintiff's behavior. Sirianni's e-mails reported that on October 31, 2006, he overheard Plaintiff on the phone with a customer talking about spirituality for about 5 minutes. He also reported that on November 1, 2006, he overheard Plaintiff talking to a customer about babies, and that the call lasted for over 15 minutes.

According to Mary, as a result of the unacceptable First Call Resolution rating in October and Plaintiff's conduct on the calls reported by Sirianni, Plaintiff was placed on Decision Making Leave ("DML") on November 3, 2006. When an employee receives DML, he or she is given the remainder of the day off with pay to make a decision as to whether he or she wants to continue as an employee of Tampa Electric. Plaintiff returned to work on November 6, 2006 and agreed to abide by the terms of the DML, which was to remain in effect for one year. (Plaintiff's deposition, Ex. 11).

On December 28, 2006, Mary received reports that Plaintiff had acted in a disruptive manner in the workplace. Co-workers reported to Mary that Plaintiff walked out of her area speaking loudly enough that customers could hear her. There were also reports that Plaintiff failed to expeditiously assist customers by placing one on hold unnecessarily while she loudly voiced complaints within the work group. Plaintiff's actions violated the DML and management requested a meeting with the Employee Status Review Committee ("ESRC") and recommended that Plaintiff be terminated.

The ESRC is made up of Human Resources Directors who review an employee's case to ensure that the employee has been afforded due process. After consideration of Plaintiff's case, the ESRC agreed with the management team's recommendation to terminate Plaintiff effective January 3, 2007, for violation of the terms and conditions of the DML. Following her termination, Plaintiff filed a third Charge of Discrimination with the EEOC on February 15, 2007, alleging retaliation. Plaintiff initiated this suit on January 22, 2008.

## DISCUSSION

**I.    Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there

be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Legal Analysis

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Butler v. Alabama Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that she engaged in statutorily protected activity, she suffered a materially adverse action, and there was some causal relation between the two events.").

Statutorily protected expression can be in the form of "opposition" or "participation." Under Title VII's opposition clause, "an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by [Title VII].'" EEOC v. Total Sys. Servs., 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). "An employee who seeks protection under the opposition clause must have a 'good faith, reasonable belief' that her employer has engaged in unlawful discrimination." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999). Moreover, the employee's belief must be both subjectively and objectively reasonable. Id. "[U]nder the participation clause, an employer may not retaliate against an employee because the employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Id.

Following the Supreme Court's decision in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the type of conduct constituting an adverse employment action "has been broadened from that which adversely effects the [employee's] conditions of employment or employment status to that which has a materially adverse effect on the [employee], irrespective of whether it is employment or workplace-related." Crawford, 529 F.3d at 973. Finally, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (quotations and alterations omitted) *abrogated on other grounds as recognized by* Crawford, 529 F.3d at 974.

Once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a non-retaliatory reason for its treatment of the employee. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer presents a non-retaliatory explanation for its actions, the burden returns to the employee to show that the employer's explanation is a pretext for retaliation. See id. "A reason is not pretext for [retaliation] unless it is shown both that the reason was false, and that [retaliation] was the real reason." Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quotations omitted) (emphasis in original). The employee can meet his burden "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (quotations omitted). However, "[p]rovided that the proffered

reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).

It appears that Plaintiff's claims of retaliation arise under the participation clause based on the September 25, 2006 and October 2, 2006 EEOC Charges of Discrimination. However, even if Plaintiff attempted to establish a retaliation claim under the opposition clause, Plaintiff's claim would fail, because the record is devoid of any evidence of discriminatory treatment and Plaintiff was unable to identify any employee outside of her protected category that was treated differently than Plaintiff for the same or similar conduct. Moreover, pursuant to the objective, reasonableness standard, the image of the knot on the "Making Choices" presentation, which was provided to all of the CSP's, could not be interpreted to be threatening or discriminatory in any way. Accordingly, any claim under the opposition clause fails as a matter of law.

Regarding the participation clause, the record is undisputed that Defendant did not receive notice of the September 25, 2006 Charge of Discrimination until October 2, 2006. Thus, to the extent that Plaintiff alleges retaliation claims based on the August 25, 2006 Action Plan, September 12, 2006 Oral Reminder, the fitness for duty evaluation on that same day, and the September 29, 2006 Written Reminder and Action Plan, with a copy of the "Making Choices" presentation, Plaintiff's claims must fail because Defendant was unaware that Plaintiff had ever complained of discrimination when these actions occurred. Gupta, 212 F.3d at 590.

Thus, the adverse employment actions that followed Defendant's receipt of Plaintiff's September 25, 2006 and October 4, 2006 Charges of Discrimination and are at issue in this case are the DML issued on November 3, 2006 and Plaintiff's termination on January 3, 2007. If Plaintiff cannot demonstrate direct evidence[2] of a causal connection between the EEOC Charges of Discrimination and these adverse actions, a "close temporal proximity" between the protected expression and the adverse action is sufficient circumstantial evidence of a causal connection for purposes of a *prima facie* case. See <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004). Accordingly, in a circumstantial case, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law. See <u>Higdon</u>, 393 F.3d at 1220 (citing <u>Wascura v. City of South Miami</u>, 257 F.3d 1238, 1248 (11th Cir. 2001)). In <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1363 (11th Cir. 2007), the Eleventh Circuit held a three-to four-month disparity between the statutorily protected expression and the adverse employment action insufficient to establish a claim for retaliation.

Here, the Court concludes that the DML issued on November 3, 2006 and Plaintiff's termination on January 3, 2007 are close enough in proximity to Plaintiff's October 4, 2006 Charge of Discrimination to establish a *prima facie* case of retaliation. However, the Court concludes that Tampa Electric asserted legitimate, non-discriminatory reasons for the issuance of the DML and Plaintiff's termination. Tampa Electric stated that Plaintiff's

---

[2] The record does not reflect any direct evidence of a causal connection between the Charges of Discrimination and the adverse actions.

continued failure to meet required work standards resulted in these actions. Tampa Electric also pointed out that Plaintiff's poor performance and the disciplinary process began months before Plaintiff filed the first Charge of Discrimination. The record is also rife with documentation of Plaintiff's failure to meet required work standards and complaints from other employees regarding Plaintiff's behavior.

Plaintiff failed to prove any evidence of pretext other than her opinion that the DML and her termination constituted unlawful retaliation. Importantly, Plaintiff's own evaluation and opinion is not a sufficient basis to establish pretext. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332-33 (11th Cir. 1998); Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). Moreover, although Plaintiff generally disagrees with Defendant's actions and vehemently denies that she had poor work performance, she fails to offer any evidence that the adverse actions were more likely motivated by a retaliatory reason.

Accordingly, Defendant is entitled to summary judgment as a matter of law on Plaintiff's claims of retaliation and Plaintiff's Dispositive Motion must be denied.

## **CONCLUSION**

For the reasons set forth herein, it is ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 38) is hereby GRANTED.
2. Plaintiff's Dispositive Motion (Dkt. 37) is hereby DENIED.
3. The CLERK is directed to enter FINAL SUMMARY JUDGMENT in favor of Defendant Tampa Electric Company and against Plaintiff Valerie R. Batchelor.

4. The CLERK is directed to CLOSE this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on January 21, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-144.msj.frm